**UNITED STATES of America**

**v.**

**Cuong Gia LE**

**No. CRIM. 03–048–A.**

United States District Court,
E.D. Virginia,
Alexandria Division.

March 29, 2004.

James Trump, Assistant United States Attorney, United States Attorney's Office, Alexandria, VA, for Plaintiff.

Frank Salvato, Alexandria, VA, James Goodman Connell, III, Devine & Connell PLC, Fairfax, VA, for Defendant.

1. Racketeer Influenced and Corrupt Organizations Act, codified at 18 U.S.C. § 1961 *et seq.*

2. Le's arraignment was originally scheduled for February 10, 2003. This arraignment did not take place, however, because Le was a fugitive at the time.

## MEMORANDUM OPINION

ELLIS, District Judge.

Defendant Cuong Gia Le, one of seven defendants in this multi-count RICO[1] indictment, is charged, *inter alia*, with four capital offenses: Two counts of murder in aid of racketeering activity in violation of 18 U.S.C. § 1959(a)(1) and two counts of murder in the course of a firearms offense in violation of 18 U.S.C. § 924(c)(1) and 924(j). After filing a series of superseding indictments, on February 27, 2004, the government filed its Notice of Intent to Seek the Death Penalty ("Death Notice"). Le now seeks to strike the government's Death Notice as untimely.

### I.

Because the motion at bar concerns the timeliness of a Death Notice, it is important to set forth the principal procedural events in this case:

- Le was originally charged on January 30, 2003 on a two-count indictment with conspiracy to affect commerce by robbery in violation of 18 U.S.C. § 1951 and unlawful use and carrying of firearms in violation of 18 U.S.C. §§ 2 and 924(c). He was arraigned on this original indictment on August 4, 2003.[2]

- Trial on the original indictment was set for October 14, 2003.

- On September 25, 2003, the government filed its First Superseding Indictment, adding four defendants, but no new charges against Le.[3] Le's arraignment on the First Superseding

3. There have been five versions of the indictment. For a complete description of all five incarnations of the indictment, see *United States v. Le*, 310 F.Supp.2d 763 (E.D.Va. 2004).

Indictment took place on October 7, 2003 and a trial date was then scheduled for December 15, 2003.

- On December 4, 2003, the government filed a Second Superseding Indictment adding various counts and defendants. With respect to Le, the Second Superseding Indictment charged him with various RICO and firearms offenses and, for the first time, charged Le with four capital offenses: Two counts of murder in aid of racketeering activity and two counts of murder in the course of a firearms offense.

- Le was arraigned on the Second Superseding Indictment on December 19, 2003 and trial was scheduled to commence on March 1, 2004.

- Also on December 19, 2003, Le's oral motion for appointment of second capital-qualified counsel was granted and on December 22, 2003, second counsel was appointed.

- On January 2, 2004, Le filed a Motion for Immediate Production of Exculpatory Evidence Relevant to the Department of Justice's Death Penalty Authorization Process, which was denied from the Bench on January 23, 2004.[4]

- [EX PARTE and UNDER SEAL]

- On February 5, 2004, the government filed a Third Superseding Indictment. This indictment differed from the Second Superseding Indictment in that it alleged aggravating factors supporting imposition of the death penalty with respect to Le pursuant to 18 U.S.C. § 3592(c).

- On February 19, 2004, Le filed a Motion to Bar and/or Strike the Government's Notice of Intent to Seek the Death Penalty.

- On February 20, 2004, Le was arraigned on the Third Superseding Indictment. At this arraignment, the government made an oral motion to continue the trial date, to which all defendants objected. It was indicated from the bench that the government's motion would be granted and the trial would be rescheduled for either April 5, 2004 or April 26, 2004.

- By Order dated February 20, 2004, the March 1, 2004 trial date was cancelled because (i) the Third Superseding Indictment was just filed February 5, 2004, (ii) arraignment on the Third Superseding Indictment was just held on February 20, 2004, (iii) the government had not yet decided whether it intended to seek the death penalty against defendant Cuong Gia Le, (iv) seven defendants remained to be tried in this matter and (v) more than thirty pre-trial motions had been filed by the seven remaining defendants, several of which involved complex issues of law and fact and require the presentation of testimony.

*See United States v. Cuong Gia Le, et al.,* Criminal No. 03-48-A (E.D.Va. Feb. 20, 2004) (Order). A motions hearing was instead set for March 1, 2004, at which time a new trial date would be set. *Id.* As of February 20, 2004, therefore, no trial date existed.

- On February 23, 2004, the government filed its opposition to Le's Motion to Bar and/or Strike the Government's Notice of Intent to Seek the Death Penalty, arguing that because the government had not yet filed a Death Notice and because there was no currently scheduled trial date, Le's motion should be denied as premature.

---

4. A memorandum opinion dated March 1, 2004 stated the reasons for the denial of this motion. *See United States v. Le,* 306 F.Supp.2d 589 (E.D.Va.2004).

- By Order dated February 24, 2004, Le's Motion to Bar and/or Strike the government's Notice of Intent to Seek the Death Penalty was denied as premature for the reasons stated by the government. *See United States v. Cuong Gia Le*, Criminal No. 03–48–A (E.D.Va. Feb. 24, 2004) (Order).

- On February 27, 2004, the government filed its Notice of Intent to Seek the Death Penalty against Le.[5]

- On March 1, 2004, Le again filed a Motion to Strike the Government's Notice of Intent to Seek the Death Penalty.

- Among the matters discussed at the March 1, 2004 motions hearing was scheduling. The Court reiterated that it had previously, on February 20, 2004, offered the parties two potential trial dates in April—April 5, 2004 and April 26, 2004—but indicated that, for reasons unrelated to this case, the April 26, 2004 trial date was no longer available.[6] The Court, therefore, orally set trial for April 5, 2004. At this point, counsel for the government noted that an April 5, 2004 trial date might raise a *"Ferebe* issue" of "whether essentially 30 days is adequate notice [of intent to seek the death penalty] under the dictates of" *United States v. Ferebe*, 332 F.3d 722 (4th Cir.2003). The Court then offered two other potential trial dates— June 21, 2004 or July 6, 2004—as, for reasons unrelated to the case, a trial date in May or early June was not available.[7] The parties were given the luncheon recess to think about these potential trial dates.

- After wrestling with these scheduling matters over the luncheon recess, the Court determined that "it would be more appropriate to begin the matter after May, rather than before May" and set the case for trial on June 22, 2004. This was due not only to the possible lack of reasonable notice of the government's formal decision to seek the death penalty, but also due to the Court's realization that personal issues would make commencing the trial any time in April or indeed any time prior to late June quite impossible.

- On March 3, 2004, the government filed a Fourth Superseding Indictment that, with respect to Le, made a few minor changes to the alleged aggrava-

5. At a hearing on March 26, 2004, counsel for the government indicated that prior to February 27, 2004, the Department of Justice had given the prosecutors in this case permission to file a Death Notice in the event procedural constraints required that a notice be filed, even though the Department had yet to reach a final decision on whether to seek the death penalty against Le. As of February 27, 2004, the Department had apparently still not reached a final decision on the death penalty. On that date, however, the prosecutors in the case were confident that they had sufficient evidence implicating Le in another murder that occurred on January 26, 1997 that would provide the basis for an aggravating factor that would surely lead the Department to authorize formally a Death Notice against Le.

For a detailed description of the Department of Justice's internal death penalty authorization process, see also *United States v. Le*, 306 F.Supp.2d 589, 590–591 (E.D.Va.2004).

6. The April 26, 2004 trial date was unavailable due to personal (not vacation) reasons not foreseen on February 20, 2004, when the March 1, 2004 trial date was cancelled and the two April dates were offered as alternatives.

7. When first presented with these two dates, late June or early July, counsel for the government expressed a desire to schedule trial to commence in May. The Court made clear, however, that no date prior to late June was possible.

ting factors supporting imposition of the death penalty.

- Finally, on March 19, 2004, the government filed an Amended Notice of Intent to Seek the Death Penalty against Le, which added four non-statutory aggravating factors identified under 18 U.S.C. § 3593(a)(2), namely (1) gang affiliation; (2) history of violence;[8] (3) evidence from guilt phase; and (4) lack of remorse.

## II.

The timeliness of the government's Death Notice is governed by 18 U.S.C. § 3592(a) and, in this circuit, by the majority's decision in *United States v. Ferebe*, 332 F.3d 722 (4th Cir.2003). On the issue of timeliness, the statutory provision is quite brief, stating simply that in cases where the government decides to seek the death penalty, the attorney for the government "shall, *a reasonable time before the trial* or before acceptance by the court of a plea of guilty, sign and file with the court, and serve on the defendant, a notice." 18 U.S.C. § 3593(a) (emphasis added). The statute is more expansive on the required contents of a notice. This notice must (1) state that the government believes that the circumstances of the offense are such that, if the defendant is convicted, a sentence of death is justified and that the government will seek such a sentence; and (2) set forth the aggravating factor or factors that the

government proposes to prove as justifying a sentence of death in the event that the defendant is convicted. *Id.*

Significantly, nothing in the statute definitively answers how much time is a "reasonable time;" what factors must be addressed to determine whether a particular time interval from Death Notice to trial is reasonable; whether the adequacy of the time period is measured by an actual prejudice or objective reasonableness standard; whether the standard should be applied *ex ante* or *post hoc;* or whether an untimely-filed Death Notice can be the basis for a continuance of the trial date. Some of these questions, it appears, are answered by the majority opinion in *Ferebe*, which provides an elucidation, or more precisely, an elaboration of the statute.

 While much of the *Ferebe* majority opinion reflects the important debate between the majority and the dissent, the following principles emerge as the law of this circuit with respect to § 3593(a).

- First, "district court orders denying motions to strike Death Notices as untimely filed are immediately appealable" to the Fourth Circuit. *Ferebe*, 332 F.3d at 726.

- Second, § 3593(a) must be regarded as a prophylactic statute that "creates for defendants not merely the right not to be convicted and sentenced without

---

8. In this new section, the government describes nine violent incidents in which Le has allegedly been involved: (1) a March 14, 1994 incident where Le carried a concealed weapon, specifically a sword with a 16–inch blade; (2) a May 15, 1995 incident during which Le and another individual threatened rival gang members and Le's associate shot and wounded one of these gang members; (3) a January 26, 1997 incident where Le, with others, intentionally killed one individual and wounded another; (4) a July 13, 1997 incident where Le shot an individual; (5) a May 17, 1998 incident where Le forcibly pulled two individ-

uals out of a car and assaulted one of them; (6) an October 20, 1999 incident where Le assaulted and threatened several individuals, including Fairfax County police officers attempting to arrest him; (7) an incident occurring in early April 2001 in which Le recruited others to assault and kill a rival gang member; (8) an April 7, 2001 incident in which Le and several others fought with numerous individuals at a billiard hall; and (9) an incident in late April 2001 in which Le armed himself with a .38 caliber handgun and went with another individual to a pool hall for the purpose of killing one Hoang Anh Tran.

adequate time to prepare, but also the right not to stand trial for one's life absent the same." *Id.* at 730.[9] As a result, the statute "must be interpreted to require an inquiry [in advance of the trial] into the objective reasonableness of the time between issuance of the Death Notice and the trial itself, in light of the particulars of the charged offense and the anticipated nature of the defense." *Id.* at 727. Actual prejudice is not a factor. *Id.* at 732.

- Third, evaluation of the following factors, among others that may appear relevant, is necessary in order to assess the reasonable timeliness of a Death Notice: "(1) the nature of the charges presented in the indictment; (2) the nature of the aggravating factors provided in the Death Notice; (3) the period of time remaining before trial, measured at the instant the Death Notice was filed *and irrespective of the filing's effects;* and, in addition, (4) the status of discovery in the proceedings." *Id.* at 737 (emphasis added and internal footnote omitted). For purposes of pre-trial Death Notice challenges, the scheduled trial date constitutes the trial date in this analysis. *Id.* at 737 n. 6.

- Finally, the issuance of a Death Notice cannot serve as the basis for a continuance of the trial date. Put another way, an untimely Death Notice cannot be rescued by delaying the trial date.[10]

■ These principles, applied here, lead to the conclusion that the government filed its Death Notice a reasonable time before trial. At the outset, however, it is important to note that a brief review of the procedural history of this case makes clear that there exists a complicating factor in undertaking the analysis set forth in *Ferebe*, particularly with respect to the third *Ferebe* factor. At the time the government filed its Death Notice on February 27, 2004, there was no scheduled trial date. The previously-scheduled March 1, 2004 trial date had been cancelled on the government's oral motion, objected to by all defendants, on February 20, 2004—the day after Le filed his first motion to bar and/or strike the Death Notice. And significantly, the order canceling the March 1, 2004 trial date listed a number of reasons for the cancellation wholly independent of the absence of a filed Death Notice. Chief

9. *See also id.* at 731 ("This statutorily-created right not to be tried for a capital sentence without having received reasonable notice can only be effectuated by an interpretation that the statute imposes a prophylactic requirement which, in turn, *necessitates* a pretrial inquiry into the objective reasonableness of the notice provided.") (emphasis in original).

10. *See id.* at 337 (district court should calculate the period of time before trial by measuring the interval from "the instant the Death Notice was filed and irrespective of the filing's effects"); *id.* at 738 (remanding the case back to the district court because the Fourth Circuit was unable to determine from the record before it whether "the trial start date was cancelled *in advance of the Death Notice's filing and irrespective of it*") (emphasis in original); *United States v. Hatten,* 276 F.Supp.2d 574, 579 n. 4 (S.D.W.Va.2003) ("The issue is not whether the Death Notice comes too late for Defendant to prepare for trial. *Ferebe* is clear that prejudice to the defense is not a factor. The test does not turn on a defendant's ability to prepare for trial, so delaying the trial date is not a remedy for an untimely Death Notice. In this case both sides contemplated that the August trial date would be continued if the Notice were filed, but there would be no reason to postpone the trial if the death notice had not been filed."); *United States v. Breeden,* 2003 WL 22019060 (W.D.Va. Aug.22, 2003) (unpublished) ("This court reads the language 'irrespective of the filing's effects' to mean that a court cannot continue a case for the purpose of allowing the government to file a timely Death Notice.").

among these, by any measure, was the fact that only ten days prior to the scheduled March 1, 2004 trial, there remained unresolved more than thirty pretrial motions, including many relatively recently-filed [11] and many raising difficult issues of fact and law, and some requiring testimony. There was no reasonable possibility that these motions could be heard and resolved by March 1, 2004 and this reason alone mandated cancellation of the March 1, 2004 trial date. It is clear, therefore, that the March 1, 2004 date should not be used to measure the period of time remaining before trial for purposes of the third *Ferebe* factor because that date was cancelled for a variety of reasons, including reasons unrelated to, and independent of, any potential Death Notice.[12] *See United States v. Breeden*, 2003 WL 22019060 (W.D.Va. Aug.22, 2003) (unpublished) ("[T]his court concludes that it should consider the February 9, 2004 trial date when assessing the reasonableness of the Death Notices because this court granted the continuance [of the trial date] for reasons unrelated to the [Death Notice] filing's effects."). Put another way, the March 1, 2004 trial date was cancelled "irrespective of the filing[ ] [of the Death Notice's] effects." *Ferebe*, 332 F.3d at 737.

The government suggests that the proper date to use in these circumstances is the currently-scheduled June 22, 2004 trial date. In support, the government argues that the proper period to consider in determining the length of the defendant's notice is the first day on which both a trial date existed and the government's notice was filed. The government thus contends that the proper interval should be the period between March 1, 2004 and June 22, 2004—a period of 113 days—since, although the Death Notice was filed on February 27, 2004, the trial date was not set until March 1, 2004. There would, of course, be a problem with using the June 22, 2004 trial date if this later date had been chosen instead of a date in April *because* the Death Notice was not filed until February 27, 2004. This is so because *Ferebe* makes clear that an untimely filed Death Notice cannot be rescued by a continuance of the trial date. *See supra* note 10 and accompanying text. Ultimately, however, the timing of the Death Notice was not the motivating factor in continuing the trial date to June 22, 2004. The Court's docket and the Court's personal availability effectively precluded any lengthy trial in April, May, or most of June. Although April 5, 2004 and April 26, 2004 were mentioned as possible trial dates, they were not realistic trial dates in light of the Court's personal circumstances, as the Court later realized during the luncheon recess of the March 1, 2004 hearing. Moreover, it is clear that neither April date was ever formally set as the trial date, as no order to that effect ever issued. The absence of an order setting an April trial date is significant because "[c]ourts must speak by orders and judg-

---

**11.** Sixteen of the then-pending motions were filed within twenty (20) days or less of the March 1, 2004 trial date. Indeed, six of these motions were filed a mere seven days before March 1, 2004. These were not trivial motions; rather they included motions to dismiss certain counts of the indictment, motions to suppress various statements, motions to sever counts of the indictment, and motions for relief from prejudicial joinder. Indeed, some of these motions, such as the motions to sever

and for relief from prejudicial joinder, are still pending and will be heard, along with yet another set (approximately 12) of recently-filed motions, on April 8, 2004.

**12.** Although the order canceling the March 1, 2004 trial date mentions that a Death Notice had not yet been filed, the mere anticipation that a Death Notice may possibly be filed should not preclude setting another trial date when reasons separate and apart from the Death Notice mandate that new trial date.

ments, not by opinions, whether written or oral, or by chance observations or expressed intentions made by courts during, before or after trial, or during argument." *Murdaugh Volkswagen, Inc. v. First Nat'l Bank of South Carolina,* 741 F.2d 41, 44 (4th Cir.1984). As a result, using either April date as the scheduled trial date for purposes of calculating the interval between the Death Notice's filing and trial would be improper. Because the trial date was scheduled for June 22, 2004 after the Death Notice was filed but for reasons chiefly due to the Court's personal availability, in addition to providing Le a reasonable time to prepare for his capital trial, it cannot fairly be said that the trial date was postponed because of the timing of the filing of the Death Notice. As a result, June 22, 2004 is the proper trial date to use for purposes of the *Ferebe* analysis.[13] Therefore, the question now becomes whether 113 days is an objectively reasonable time to prepare for trial given the nature of the capital charges in the indictment,[14] the nature of the aggravating factors in the Death Notice, and the status of discovery in the proceedings. *Ferebe,* 332 F.3d at 737.

█ Le is charged with four capital offenses in the Fourth Superseding Indictment: Two counts of murder in aid of racketeering activity and two counts of murder in the course of a firearms offense. All four counts, however, relate to two murders that occurred as part of one discrete event that allegedly took place on May 13, 2001 at the Majestic Restaurant in Falls Church, Virginia. Count 8 of the Fourth Superseding Indictment charges Le with knowingly, willfully, and unlawfully causing the murder of Binh Anh Luu on May 13, 2001 "for the purpose of gaining entrance to and maintaining and increasing position in" a gang called the Oriental Playboys ("OPB"), an enterprise allegedly engaged in racketeering activity. Count 9 similarly charges Le with causing the murder of Long Phi Nguyen on May 13, 2001, also "for the purpose of gaining entrance to and maintaining and increasing position in" OPB. Count 23 relates to the same May 13, 2001 murder of Binh Anh Luu, which allegedly occurred during the course of a firearms offense in which Le unlawfully, knowingly and intentionally used, carried, brandished, and discharged a .45 caliber handgun, as charged in Count 22 of the Fourth Superseding Indictment. Similarly, Count 24, which charges Le with a second count of murder in the course of a firearms offense, refers to the same May 13, 2001 murder of Long Phi Nguyen. Thus, while Le is charged with four capital offenses, they relate to the same two murders that occurred on the same day, in the same place, and at the same time. As such, the legal and factual issues presented by these charges do not appear "so complex or atypical" that 113 days would be an unreasonably short period of time to prepare a defense. *Breeden,* 2003 WL 22019060 at \*3. Therefore, the nature of the capital charges against Le weighs in

---

**13.** If *Ferebe* dictates that the March 1, 2004 trial date governs, it follows of course that the Death Notice would be untimely and should be stricken. It further follows that defense counsel's original suggestion that the proper procedure would have been to set a Death Notice deadline filing date in May 2004 and a subsequent trial date in February 2005 would certainly have obviated any issue with respect to the timeliness of the Death Notice. Such a procedure, however, also would have the dis-

advantage of delaying trial far beyond what might be reasonable.

**14.** While *Ferebe* speaks more generally of the "charges in the indictment," it is clear that this must mean the *capital* charges in the indictment in cases where a defendant is charged with both capital and noncapital crimes because, if there were no capital charges, § 3593(a) would not be triggered.

favor of finding the 113 day time period reasonable.

As for the aggravating factors in the Death Notice, all the aggravating factors listed in the first Death Notice specifically relate back to the capital offenses Le is charged with in the Fourth Superseding Indictment, namely the murders of Binh Anh Luu and Long Phu Nguyen. As a result, these aggravating factors require no additional investigation on the part of the defense for the purposes of any potential death penalty phase of trial, as an investigation into the facts and circumstances of charges in the indictment would undoubtedly take place in any event in preparation for Le's defense to these capital charges during the guilt phase of trial.[15]

Finally, the status of discovery in these proceedings also does not weigh against finding the timeliness of the Death Notice reasonable. Since January 2003, Le has had the opportunity to review all Rule 16, Fed.R.Crim.P., materials and while there have been discovery disputes and motions, it is clear that a substantial amount of discovery has already occurred in this case. One hundred thirteen days is an adequate time before trial to resolve any further or pending discovery disputes.

Thus, the conclusion that the government's February 27, 2004 Death Notice was timely filed is consistent with both § 3593(a) and *Ferebe*. This holding is consistent with § 3593(a) because, in these circumstances, 113 days constitutes a reasonable time before trial. It is also consistent with *Ferebe* because that decision does not preclude postponing trial for reasons independent of, and unrelated to, the Death Notice, even if it is anticipated that a Death Notice may be filed.

### III.

In sum, applying the *Ferebe* factors to the instant facts makes clear that the government filed its Death Notice a reasonable time before Le's capital trial, in accordance with § 3593(a). Accordingly, Le's Motion to Strike the Government's Notice of Intent to Seek the Death Penalty must be denied.

An appropriate order will issue.

---

**15.** While the government filed an Amended Death Notice on March 19, 2004, no motion to strike the Amended Death Notice has yet been filed. Not addressed here, therefore, is whether the additional aggravating factors included in the Amended Death Notice alter the § 3593(a) analysis. Nonetheless, it is worth noting that government counsel was incorrect in suggesting at a hearing on March 26, 2004, that the June 22, 2004 trial date may not be the relevant trial date for purposes of an evaluation of the timeliness of the Amended Death Notice. As *Ferebe* makes quite clear, the scheduled trial date "at the instant the Death Notice [is] filed" is to be used to calculate the amount of time remaining before trial. *Ferebe*, 332 F.3d at 737 & n. 6. At the instant the Amended Death Notice was filed, the trial was scheduled to commence on June 22, 2004. That is the relevant trial date for any future evaluation of the timeliness of the Amended Death Notice.