**UNITED STATES of America**

v.

**Cuong Gia LE**

**No. CRIM. 1:03CR48.**

United States District Court,
E.D. Virginia,
Alexandria Division.

July 20, 2004.

Paul P. Vangellow, Falls Church, VA, Frank Salvato; Alexandria, VA, James Goodman Connell, III, Devine & Connell PLC, Fairfax, VA, for Defendant.

## ORDER

ELLIS, District Judge.

The matter is before the Court on the government's Motion for Reconsideration of the Court's Order Striking Amended Death Notice.

By Memorandum Opinion and Order dated April 30, 2004, this Court held (i) that the requisite good cause to amend the original Death Notice was not shown because the government failed to act with reasonable diligence in seeking the amendment, and, in any event, (ii) that the government's Amended Death Notice was not filed a reasonable time before trial, as required by 18 U.S.C. § 3593(a) and *United States v. Ferebe,* 332 F.3d 722 (4th Cir.2003), the Fourth Circuit's decision interpreting § 3593(a)'s "reasonable time" requirement. *See generally United States v. Cuong Gia Le,* 316 F.Supp.2d 343 (E.D.Va.2004).

In this Motion for Reconsideration, the government argues (i) that reasonable diligence is not the appropriate standard by which to measure good cause under § 3593(a); (ii) that the government nonetheless exercised reasonable diligence in filing the Amended Death Notice; (iii) that the Court should not have utilized the June 22, 2004 scheduled trial date for purposes of its *Ferebe* analysis; and (iv) that the government has provided discovery well in advance of the discovery schedule deemed reasonable by the Court. None of the government's arguments—some of which merely reiterate arguments previously made and considered—alter the conclusion that the Amended Death Notice must be stricken.

Section 3593(a) of Title 18 governs the time for filing a death notice. Specifically, it states that in cases where a death sentence is justified by law and sought by the government, the government attorney "shall, *a reasonable time before the trial* or before acceptance by the court of a plea of guilty, sign and file with the court, and serve on the defendant, a notice." 18 U.S.C. § 3593(a) (emphasis added).[1] In addition to this requirement that a death notice must be filed a reasonable time

---

1. This notice must (i) state that the government believes that the circumstances of the offense are such that, if the defendant is convicted, a sentence of death is justified and that the government will seek such a sentence; and (ii) set forth the aggravating factor or factors that the government proposes to prove as justifying a sentence of death in the event that the defendant is convicted. *See* 18 U.S.C. § 3593(a).

before trial, the statute also permits the government to amend the death notice "upon a showing of *good cause.*" *Id.* (emphasis added). There are, therefore, two separate and distinct statutory requirements: (i) a filing of the death notice a reasonable time before trial; and (ii) a showing of good cause to amend that notice.

In this circuit, the requirement that a death notice be filed a reasonable time before trial has been elucidated in *United States v. Ferebe,* 332 F.3d 722 (4th Cir. 2003). The teaching of that opinion, applied to the original Death Notice in this case, led to the conclusion that the original Death Notice was timely filed. *See United States v. Cuong Gia Le,* 311 F.Supp.2d 527, 535 (E.D.Va.2004) ("[A]pplying the *Ferebe* factors to the instant facts makes clear that the government filed its Death Notice a reasonable time before Le's capital trial, in accordance with § 3593(a)."). The government's subsequent attempt to amend the Death Notice was unsuccessful because the lack of diligence on the government's part was held to defeat a showing of good cause. *See Le,* 316 F.Supp.2d at 346–51. As noted in that ruling, " § 3593(a) good cause must focus on the diligence of the government in uncovering the new information contained in the Amended Death Notice and the timing of when that information was obtained." *Id.* at 349.

■■■■■ Relying on three cases from other circuits—*United States v. Battle,* 173 F.3d 1343 (11th Cir.1999); *United States v. Cuff,* 38 F.Supp.2d 282 (S.D.N.Y.1999); and *United States v. Pretlow,* 770 F.Supp. 239 (D.N.J.1991)—the government now argues that the focus of § 3593(a)'s good cause requirement is not reasonable diligence, but rather the government's good faith and any resulting prejudice to the defendant. This argument is flawed in

that it conflates the reasonable time requirement with the good cause requirement; they are separate and distinct requirements. When the government files an amended death notice, an assessment of whether there is good cause to amend must be undertaken. Once good cause has been shown, courts in this circuit are still obligated to assess whether the amended death notice was filed a reasonable time before trial under *Ferebe.* If no showing of good cause is made, the timeliness of the amended death notice need not be addressed. Good cause and timeliness are separate requirements that involve distinct inquiries. Good cause focuses on the government's diligence and, implicitly, on the government's good faith, in promptly discovering the information that is the substance of the amendment and then in promptly seeking the amendment. The government's failure to exercise reasonable diligence in seeking an amendment may, in some circumstances, amount to a lack of good faith. Yet, the absence of reasonable diligence does not necessarily connote bad faith; it does mean, however, that the requisite good cause is lacking.

The reason the government's diligence in seeking to amend a death notice is a significant focus of the good cause inquiry is the propensity for delay in capital cases that is injurious to the administration of justice. By requiring the government to act with reasonable diligence in seeking death notice amendments, the propensity for delay is minimized and the administration of justice in capital cases enhanced.

The second part of the good cause standard the government advocates—resulting prejudice to the defendant—is adequately taken into account in the *Ferebe* analysis of whether the amount of time remaining before the scheduled trial date is an objectively reasonable amount of time for a defendant to prepare for the capital sen-

tencing phase of trial, given the nature of the aggravating factors and the status of discovery in the proceedings. And importantly, § 3593(a) is reasonably read as making the "reasonable time before the trial" requirement applicable to the amended death notice, as well as to the original death notice. The virtue of this reading of the statute is that it sensibly accommodates the assumption that the drafters chose to use different terms, i.e., "reasonable time before the trial" and "good cause" to mean different requirements. And, if so read, then the *Ferebe* analysis is applicable to an amended notice, as well as to the original notice.

In the end, however, there is little practical difference between reading the statute in this fashion and reading the statute, as the government does, to find the prejudice to defendant factor within the "good cause" requirement. In either case, essentially the same factors—the government's diligence (and implicit good faith) and any unfair prejudice to defendant's right to an adequate opportunity to prepare for the sentencing phase of trial—are taken into account;[2] the result of both readings of the statute is that, in this circuit, an amended death notice must be supported by good cause, i.e., the government must show it was reasonably diligent in filing the amended notice, and it must also pass muster under *Ferebe*. The Amended Death Notice in this case failed to clear either hurdle. *See Le,* 316 F Supp.2d at 345–55.

The government's cited cases are not persuasive to the contrary; they are distinguishable in important ways. Both *Pretlow* and *Cuff* involve 21 U.S.C. § 848, the CCE death penalty provision, a different, albeit similar, statute. Importantly, all of the new aggravating factors in the government's amended notice in *Pretlow,* unlike the amended notice at issue here, either related to the specific murders the defendant was charged with or were simply allegations of previous criminal *convictions. Id.* at 241.[3] Like *Pretlow,* the new

---

**2.** Indeed, even assuming that the *Pretlow* standard were to govern here, it does not alter the conclusion that the government has failed to make a showing of good cause to amend the Death Notice. To show good cause under *Pretlow,* the government must show (i) that each amendment has a plausible connection to the facts of this case; (ii) that there was no deliberate delay by the government, and (iii) that there is no prejudice to the defendant. 770 F.Supp. at 242. While it is true that there was no deliberate delay by the government in this case, it is equally true that the nine new allegations in the Amended Death Notice are *not* all connected to the facts of this case. Indeed, as already noted in the previous memorandum opinion, "violent incident 'c' essentially imports a second capital murder trial into the penalty phase of this case." *Le,* 316 F.Supp.2d at 353. Moreover, the *Ferebe* analysis in this case already answered in the negative the question of "whether notice was fairly provided in sufficient time for the defendant to adequately prepare his response." *Pretlow,* 770 F.Supp.

at 241. Indeed, after a lengthy discussion of the new allegations in the Amended Death Notice, this Court concluded that 94 days was not a reasonable amount of time to prepare effectively for the nine new allegations, particularly violent incident "c", in the context of this case. *Le,* 316 F.Supp.2d at 353. As a result, even applying the *Pretlow* standard to this case leads to the same conclusion: The government did not show good cause to amend the original Death Notice.

**3.** It is true that the court in *Pretlow* noted that the government could have acted with greater diligence, but that this was irrelevant because this lack of diligence was not the result of any bad faith on the government's part. *See Pretlow,* 770 F.Supp. at 241 ("Although it also appears that all of these changes could have been included in the original notices, the government's delay does not appear to have been caused by bad faith as much as by a somewhat slow analysis of its case."). This reasoning ignores the importance of governmental diligence and is therefore unpersuasive.

aggravating factors in *Cuff* all related back specifically to four additional murders charged in a superseding indictment. *Cuff,* 38 F.Supp.2d at 284. The Attorney General did not authorize prosecutors to seek the death penalty for the four additional murders in the superseding indictment until after the original death notice had been filed. *Id.* In light of this chronology of events, the court concluded that "the government could not have given notice of its intent to seek the death penalty with respect to the additional murders ... before June 1998 because it had not yet received authorization from the Attorney General to seek the death penalty in connection with those additional murders." *Id.* at 285.

Finally, in *Battle,* the government did not amend the death notice to include any new aggravating factors. Instead, the death notice was amended to include specific evidence to support an aggravating factor already listed in the government's original notice. *See Battle,* 173 F.3d at 1347. As a result, the court there found a showing of good cause unnecessary. *Id.* In dicta, however, the court indicated that the government had shown good cause to amend its notice because (i) "[a]t least one of the instances of violence added to the notice occurred after the filing of the original notice," and (ii) there was no prejudice to the defendant. *Id.* at 1347–48.

Thus, it is clear that both *Pretlow* and *Cuff,* unlike the instant case, dealt with amendments specifically related to the very murders charged in the indictments and, in *Cuff,* to that defendant's previous convictions. This case could not be more different. The nine new violent incidents alleged in the Amended Death Notice do not all relate back to the murders or other charges alleged in the indictment. Nor has Cuong Le been convicted of any charges relating to these nine violent inci-

dents. Moreover, in both *Cuff* and *Battle,* subsequent events—a superseding indictment and subsequent death penalty authorization and a violent act which occurred *after* the original notice—necessitated the filing of amended notices, not any lack of diligence. Here, all nine of the incidents alleged in the Amended Death Notice occurred long before the original Death Notice was filed. Moreover, the government admits, for example, that it knew about Cuong Le's involvement in violent incident "c"—the 1997 murder of Thiet Phan—*before* filing the original Death Notice. Indeed, knowledge of that 1997 murder prompted the government to file the original Death Notice.

In summary, whether *Ferebe's* timeliness requirement is read to apply to amended as well as original death notices or the prejudice inquiry is found in the good cause requirement for amending death notices, the result in this case is the same: The Amended Death Notice fails on both grounds. As a result, good cause to amend the Death Notice was not shown.

■ Because the government merely reiterates arguments previously made and considered with respect to (i) the contention that the government exercised reasonable diligence in filing the Amended Death Notice and (ii) the argument that June 22, 2004 is not the correct trial date for the *Ferebe* analysis, those arguments need not be addressed again here. *See* 316 F.Supp.2d at 347–52. Finally, with respect to the government's contention regarding the status of discovery, it is sufficient to note that, even if true, it does not alter the conclusion that the Amended Death Notice was not filed a reasonable time before trial under *Ferebe.* As made clear in the memorandum opinion, "*[e]ven if discovery were complete,* ... the nature, seriousness, and number of the new allega-

tions in the Amended Death Notice are themselves a sufficient basis to conclude that the government did not file its Amended Death Notice a reasonable time before trial, as required by § 3593(a) and *Ferebe.*" *Id.* at 354–55 (emphasis added).

Accordingly, for the reasons stated herein,

It is **ORDERED** that the government's Motion for Reconsideration of the Court's Order Striking Amended Death Notice is **DENIED**.

It is further **ORDERED** that, in the event the government seeks to appeal this ruling, it must advise the Fourth Circuit Court of Appeals of this decision promptly, so that the Fourth Circuit may consider whether to consolidate this matter with the pending interlocutory appeals.

It is further **ORDERED** that the government is **DIRECTED** to take steps to ascertain the briefing and oral argument schedules for the pending interlocutory appeals and report those schedules back to this Court so that prompt steps may be taken to reschedule trial in this matter.[4]

The Clerk is directed to send a copy of this Order to all counsel of record.

---

4. Presumably, the defendant and the government have advised or will advise the Fourth Circuit Court of Appeals that there is a defendant in addition to Cuong Le—Phu Van Ho— who is charged as an accessory after the fact with respect to the murders charged against Cuong Le and that this Court previously denied Ho's motion for severance. Ho is also currently detained pending trial. Knowledge of the appellate schedule will aid the Court in considering further whether a new trial date may be set and whether the issues of severance or Ho's pre-trial detention should to be revisited.