**UNITED STATES of America,**

v.

**Charles Edward HATTEN.**

**No. CRIM.A. 3:02–00232–02.**

United States District Court,
S.D. West Virginia,
Huntington Division.

Aug. 14, 2003.

---

Charles Edward Hatten, Charleston, WV, Pro se.

Jay T. McCamic, McCamic & McCamic, Wheeling, WV, Matthew A. Victor, Victor, Victor & Helgoe, Charleston, WV, for Charles Edward Hatten.

Miller A. Bushong, III, U.S. Attorney's Office, Charleston, WV, for United States.

### ORDER

CHAMBERS, District Judge.

Currently pending before the Court is Defendant Charles Edward Hatten's "Motion for an Order Barring the Government From Seeking the Death Penalty due to a Failure to Provide Reasonable Notice of Intent to Seek the Death Penalty Prior to Trial or an Evidentiary Hearing, or, in the Alternative, Motion for Additional Preparation Time and Memorandum in Support." On July 28, 2003, Defendant appeared in person and with counsel to argue the motion. Upon considering the arguments made by defense counsel and the Government, the Court **GRANTS** Defendant's motion for the following reasons.

## I.

### Factual and Procedural History

Defendant was originally charged with drug conspiracy in Count I of a three-count Indictment. His co-defendants, Winford Marvin Moore and Jerry Lee Mays, were charged with the same conspiracy count and with drug distribution counts. The Indictment was unsealed on October 17, 2002, and their trial was set for January 7, 2003. Mr. Mays entered a guilty plea to Count Two on December 19, 2002. Delays in the arraignment of Mr. Moore caused the trial date to be reset to February 25, 2003. Mr. Moore subsequently pled guilty to Count Three, leaving only Defendant to stand trial under the original Indictment.

On January 27, 2003, a few days after Mr. Moore's plea, Defendant moved for and was granted a continuance of the trial date based on his counsel's need for medical treatment scheduled that week. The Court reset the trial to April 15, 2003. On March 18, 2003, a Superceding Indictment was filed, charging Defendant with the drug conspiracy and a new count under 18 U.S.C. §§ 924 and 1111, along with Special Findings pursuant to the Federal Death Penalty statute. Defendant's appointed counsel then filed a request for a status conference and the appointment of "learned counsel." Defendant was arraigned on the Superceding Indictment on March 26, 2003, at which time the trial was set for June 3, 2003. On April 2, 2003, the Court appointed "learned counsel."

On April 21, 2003, defense counsel filed a motion to continue the June trial date, pointing out that the case was "a potential death penalty case" and discussing the need for additional time to gather evidence, to present Defendant's case to the United States Attorney General, and to prepare for the "possibly bifurcated stages of the proceedings." *See Defendant's Motion to Continue Trial Date* (docket entry

97). The Court granted this motion on May 1, and reset the trial date to August 12, 2003. Defense counsel met with the Attorney General's review committee on May 5, 2003. On July 7, 2003, the Government filed its Notice of Intent to Seek the Death Penalty. Subsequently, on July 21, 2003, Defendant filed a series of motions including the instant motion.

In addition to this procedural history, the Court notes that Defendant alleged other facts pertinent to the sequence of events. The Government's Response does not dispute these allegations, so the Court accepts them as true for the purposes of this motion. Defendant states that prior to the original Indictment, he had been arrested on state murder charges for the killing later alleged in the Superceding Indictment. His motion goes on to claim that key witnesses, such as his girlfriend and his two co-defendants, were cooperating with law enforcement and providing evidence implicating Defendant in the drug conspiracy and murder. Continuing, Defendant's motion states he was given an ultimatum to either plead guilty to the original charge or risk the Superceding Indictment. On March 17, 2003, he declined the plea agreement offered by the Government, and he was charged the next day with the Superceding Indictment. He also states in his motion that his counsel was advised on March 31, 2003, that the United States Attorney planned to file a memorandum with the Attorney General recommending against the authorization for the death penalty. On May 5, 2003,

counsel met with the Attorney General's Capital Case Unit. On June 21, 2003, the Assistant United States Attorney telephoned defense counsel to inform them that the Attorney General had authorized the death penalty and a notice of such would be filed. On July 7, when the Death Notice was filed, the scheduled trial date was August 12, thirty-six days away.[1]

## II.

## Discussion

### A.

### Analytical Framework

In his motion, Defendant argues that the amount of time between the Death Notice and the scheduled trial date is insufficient to prepare his defense. For instance, Defendant asserts there is insufficient time for his counsel to file necessary motions, to conduct trial preparation, to submit a proposed budget and get approval of certain costs from the Fourth Circuit Court of Appeals, and to investigate possible mitigating evidence. Therefore, Defendant asked this Court to bar the death penalty and order that the trial proceed on August 12, as an ordinary felony case.

Recently, the Fourth Circuit considered the issue regarding the timeliness of a Death Notice. In *United States v. Ferebe*, 332 F.3d 722 (4th Cir.2003), the defendant challenged the district court's decision not to strike the Death Notice on the basis that he did not receive the Notice within a reasonable time before trial, as required by 18 U.S.C. § 3593(a).[2] *Id.* at 724. In

---

**1.** In its Response, the Government states that it "filed its notice of intention to seek the death penalty on June 25, 2003. That filing provided defendant with 48 days' notice measured from the filing of the notice to the trial date." *Response of the United States to Defendant's Pretrial Motions*, at 10. However, as noted above, the Death Notice was not filed until July 7.

**2.** Section 3593(a) provides:

**Notice by the government.**—If, in a case involving an offense described in section 3591, the attorney for the government believes that the circumstances of the offense are such that a sentence of death is justified under this chapter, the attorney shall, a reasonable time before the trial or before acceptance by the court of a plea of guilty, sign and file with the court, and serve on the defendant, a notice—

examining this issue, the Fourth Circuit first determined that § 3593(a) is a prophylactic statute which protects an accused from being tried for a capital offense without reasonable notice. *Id.* at 727. In other words, the Court said that a defendant's "rights are denied at the point when he proceeds toward trial, or actually to trial, in the absence of a reasonable time between his receipt of the Death Notice and his capital trial." *Id.* at 732. Moreover, the Court stated that *"this is so, regardless of whether he will or will not be, or was or was not, prejudiced by an unreasonably delayed Death Notice." Id.* (emphasis original). According to the Fourth Circuit, "the question of whether the statute has been violated by a prejudice inquiry is, pure and simple, to confuse the question of harmlessness with the question of violation." *Id.* at 736.

Thus, as a threshold matter, the Fourth Circuit held that § 3593(a) "must be interpreted to require an inquiry into the objective reasonableness of the time between issuance of the Death Notice and the trial. itself, in light of the particulars of the charged offense and the anticipated nature of the defense." *Id.* at 727. As this inquiry is a protective measure which occurs before trial, the Fourth Circuit further stated that a district court's decision to deny a defendant's motion to strike a Death Notice is conclusive and collateral to the merits of the case. Therefore, the decision is immediately appealable because, if wrongly decided, it would irrepa-

rably deprive a defendant of the right not to stand trial for a capital offense without first being given reasonable notice that the death penalty is being sought. *Id.* at 730.

■ After finding the decision is immediately appealable as a collateral matter, the Fourth Circuit set forth the analytical framework to be applied to determine whether the prosecution complied with the reasonable notice requirement. This framework includes, among other relevant factors:

> (1) the nature of the charges presented in the indictment; (2) the nature of the aggravating factors provided in the Death Notice; (3) the period of time remaining before trial, measured at the instant the Death Notice was filed and irrespective of the filing's effects; and, in addition, (4) the status of discovery in the proceedings.

*Id.* at 737 (footnote omitted). The Court now considers this analytical framework in light of the present facts.

### B.

### Application of the *Ferebe* Framework

### 1.

### The Nature of the Charges

■ Defendant was originally charged with one count of conspiracy to manufacture and distribute more than fifty grams of methamphetamine from January 2001 to August 2002. The Superceding Indict-

---

(1) stating that the government believes that the circumstances of the offense are such that, if the defendant is convicted, a sentence of death is justified under this chapter and that the government will seek the sentence of death; and

(2) setting forth the aggravating factor or factors that the government, if the defendant is convicted, proposes to prove as justifying a sentence of death.

The factors for which notice is provided under this subsection may include factors

concerning the effect of the offense on the victim and the victim's family, and may include oral testimony, a victim impact statement that identifies the victim of the offense and the extent and scope of the injury and loss suffered by the victim and the victim's family, and any other relevant information. The court may permit the attorney for the government to amend the notice upon a showing of good cause.

18 U.S.C. § 3593(a).

ment repeats this charge and adds a second count, alleging a capital offense. Specifically, Count Two charges that Defendant used a firearm, during and in relation to the conspiracy, to commit murder on August 6, 2002. The Superceding Indictment alleges in its Notice of Special Findings that Defendant:

(a) was 18 years or older at the time of the offense;

(b) intentionally killed the victim;

(c) intentionally inflicted serious bodily injury that resulted in the victim's death; and

(d) committed the offense after substantial planning and premeditation.[3]

Examining the nature of these charges in the context of the Government's obligation to provide "reasonable notice" of its intention to seek the death penalty, the Court makes the following observations. First, neither the underlying factual basis nor the elements of the offenses charged are complex or unusual. The charges are rather typical in both respects: a drug conspiracy, mostly regional in character and unsophisticated in its means, and a murder committed by one conspirator to eliminate a fellow conspirator believed to be cooperating with local law enforcement. The Government readily admits that "[t]he elements of each charge are straightforward." *Response of the United States to Defendant's Pretrial Motions*, at 9. Second, Defendant's role in the drug conspiracy and the murder was known to the Government well before the Superceding Indictment. Defendant already had been arrested for the murder by state authorities, his co-defendants and his girlfriend were cooperating pursuant to the plea agreements, and the Government apparently had advised Defendant that it would formally charge him with the murder if he refused a plea agreement which exposed him to life imprisonment. The Government knew all along Defendant could be charged with a capital offense and sought to hold him responsible for that conduct well before deciding to seek the Superceding Indictment. Every factor listed in the Death Notice was known to the Government when it obtained the Superceding Indictment. In short, by the time this Court set the August trial date, the Government had all the information it relied upon in filing the Death Notice. Despite this fact, the Death Notice was not filed until July 7. Considering that the Government had this information and chose to defer the Notice until July 7, the "nature of the charges" factor weighs in favor of Defendant's motion.

### 2.

### Nature of the Aggravating Factors

For the same reasons, the "nature of the aggravating factors provided in the Death Notice" tilts toward Defendant's position. The basis for the statutory factors was identified early on: the alleged killing was intentional and resulted after substantial planning and premeditation. The non-statutory factors (future dangerousness, victim impact, and obstruction of justice) were likewise uncomplicated, legally and factually, and well known to the Government for months before the Death Notice. Nothing occurred in the procedural development of the case to impede the Government's review and decision as to the factors it would assert to justify seeking the death penalty. In short, despite a trial date of August 12, the Government took more than three months after the Su-

---

**3.** Factors (b) and (c) are presumably alternatives and have the same factual basis in this case.

perceding Indictment to provide the formal Death Notice.

### 3.

### The Interval Between the Filing of the Death Notice and the Trial Date

The next factor is "the period of time remaining before trial, measured at the instant the Death Notice was filed and irrespective of the filing's effects." In calculating this interval, the Court is required to look at two operative dates. First, the Court must consider the actual date the Death Notice was formally filed and not some date Defendant knew or should have known that the Government would seek the death penalty. *See Ferebe,* 332 F.3d at 732 (criticizing the dissent's analysis of the effect of actual, though not formal, notice). In this case, formal notice was filed on July 7. Second, the Court must look at the trial date that was in existence at the time of such filing, even though the issuance of the Death Notice may affect the viability of the trial date. *See Ferebe,* 332 F.3d at 737 (stating "that a proper analysis of a motion to strike a Death Notice for violation of section 3593(a)'s timeliness requirement must clearly address ... the period of time that remains before trial, as of the moment of the Death Notice's filing, and irrespective of that filing"). At the time the Notice was filed in this case, the trial was scheduled to begin on August 12. Thus, the interval between the filing and the scheduled trial date was only thirty-six days.

Section 3593 does not set a specific deadline for a death notice. Instead, Congress mandated a flexible standard requiring the notice "a reasonable time before trial." Given the implications inherent to capital punishment, notice only thirty-six days before trial falls in the low end of timeliness.[4] For instance, a defendant has a right to insist that a trial not be held less than thirty days following his first appearance on a charge. *See* 18 U.S.C. § 3161(c)(2).[5] While thirty-six days notice is not *per. se* unreasonable, such a short interval is insufficient to overcome the weight of the other factors.

### 4.

### The Status of Discovery in the Proceedings

The last enumerated factor is the "status of discovery." Here, the Court notes that the Government provided the bulk of its disclosures and discovery material in November 2002, while the original Indictment was still in play. As the case advanced to the Superceding Indictment, more discovery was provided by the Government in a series of supplemental disclosures. While supplemental disclosures have continued, the Court finds that most of the new material relates to the Government's experts on the death penalty issues. There have been few disputes between the parties, so the Court has held no significant role in disposing of discovery motions. Again, neither the information provided in the ongoing disclosures nor any procedural issue has affected the ability of the Government to issue its Death Notice. Therefore, the Court finds the status of discov-

---

**4.** The issue is not whether the Death Notice comes too late for Defendant to prepare for trial. *Ferebe* is clear that prejudice to the defense is not a factor. The test does not turn on a defendant's ability to prepare for trial, so delaying the trial date is not a remedy for an untimely Death Notice. In this case both sides contemplated that the August trial date would be continued if the Notice were filed, but there would be no reason to postpone the trial if the death notice had not been filed.

**5.** Section 3161(c)(2) provides: "Unless the defendant consents in writing to the contrary, the trial shall not commence less than thirty days from the date on which the defendant first appears through counsel or expressly waives counsel and elects to proceed pro se." 18 U.S.C. § 3161(c)(2).

ery reinforces the Court's conclusion that the Government should have acted more quickly in filing the Notice.

### III.

### Conclusion

Accordingly, for the foregoing reasons, the Court finds that the Death Notice was not filed a reasonable time before trial, as required by 18 U.S.C. § 3593(a). Therefore, the Court **GRANTS** Defendant's motion and **STRIKES** the Government's Notice of Intent to Seek the Death Penalty. As this case will now proceed as an ordinary felony case, the Court **SETS** a status conference for **Monday, August 18, 2003, at 1:30 p.m.** to discuss scheduling a new trial date.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel and the defendant, the U.S. Attorney's Office, the U.S. Probation Office, and the U.S. Marshal's Service.