**PUBLISHED**

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

SHAWN ARNETTE BREEDEN,
*Defendant-Appellant.*

No. 03-22

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

KEVIN THOMAS CASSELL,
*Defendant-Appellant.*

No. 03-23

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

MICHAEL ANTHONY CARPENTER,
*Defendant-Appellant.*

No. 03-24

Appeals from the United States District Court
for the Western District of Virginia, at Charlottesville.
Samuel G. Wilson, Chief District Judge.
(CR-03-13)

Argued: February 24, 2004

Decided: April 30, 2004

Before WILKINS, Chief Judge, and WIDENER and
SHEDD, Circuit Judges.

Affirmed by published opinion. Chief Judge Wilkins wrote the majority opinion, in which Judge Shedd joined. Judge Widener wrote a concurring and dissenting opinion.

## COUNSEL

**ARGUED:** Steven David Rosenfield, Charlottesville, Virginia; Pamela Rogers Johnson, Charlottesville, Virginia, for Appellants. William Frederick Gould, Assistant United States Attorney, Charlottesville, Virginia, for Appellee. **ON BRIEF:** Denise Y. Lunsford, DENISE Y. LUNSFORD, P.C., Charlottesville, Virginia, for Appellant Breeden; David L. Heilberg, Charlottesville, Virginia, for Appellant Cassell; J. Lloyd Snook, III, SNOOK & HAUGHEY, P.C., Charlottesville, Virginia, for Appellant Carpenter. John L. Brownlee, United States Attorney, Timothy J. Heaphy, Assistant United States Attorney, Charlottesville, Virginia, for Appellee.

## OPINION

WILKINS, Chief Judge:

The Federal Death Penalty Act of 1994 requires the Government to file a notice of intent to seek the death penalty "a reasonable time before the trial or before acceptance by the court of a plea of guilty." 18 U.S.C.A. § 3593(a) (West 2000). Forty-one days before the scheduled beginning of their trial for offenses punishable by death, Shawn Arnette Breeden, Kevin Thomas Cassell, and Michael Anthony Carpenter (collectively, "Appellants") moved to prohibit the Government from seeking the death penalty against them on the basis that it was then too late to file a death notice that would comply with § 3593(a). The district court did not rule on this motion until after the Government had filed a death notice; considering the date of the filing and a rescheduled trial date, the district court denied the motion. For the reasons set forth below, we affirm.

I.

Appellants are charged with six offenses in connection with the robbery and murder of Kevin Lee "Calvin" Hester, which occurred

during a string of violent robberies allegedly committed by Appellants on August 8 and 9, 2002. The charges against Appellants include three offenses that are punishable by death.

Appellants were indicted in February 2003, and an initial trial date was set for March 18. Shortly thereafter, the trial was rescheduled for July 14, 2003. On June 3—41 days before the scheduled trial date—Breeden moved to prohibit the Government from seeking the death penalty ("motion to prohibit"), asserting that the Government had failed to provide notice of its intention to seek the death penalty a reasonable time before trial. Cassell and Carpenter subsequently joined this motion. The district court conducted a hearing on the matter on June 13, but did not rule at that time.

On June 20, 2003, the Government moved for a continuance on the basis that it could not be prepared for a July 14 trial. In support of this motion, the Government noted that numerous pieces of evidence were still being analyzed, that no witnesses had been subpoenaed, and that additional investigation was being conducted concerning two robberies that occurred before the murder. On June 24, the district court conducted a telephone conference regarding the motion for continuance and the recent decision of this court in *United States v. Ferebe*, 332 F.3d 722 (4th Cir. 2003).[1] At that hearing the district court informed the Government that it had until July 8 to file a notice of intent to seek the death penalty. On July 3, the court held another telephonic hearing at which it considered the Government's request for an extra week to file its notice. The court granted this request. On July 7, the district court entered a written order granting the Government's motion to continue and scheduling the trial for February 9, 2004.[2]

The Government filed its notice of intent to seek the death penalty on July 15. On August 26, the district court entered an order denying the motion to prohibit.

---

[1]The telephonic hearing was not recorded or transcribed. Appellants complain that one or more of the attorneys lost the connection at various points during the hearing, but they do not allege any harm from this fact.

[2]The district court subsequently rescheduled the trial to begin May 24, 2004. At oral argument, the parties informed us that another motion to continue is pending before the district court.

## II.

We begin with the question of our jurisdiction, as we must, *see Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998). Appellate jurisdiction is generally governed by 28 U.S.C.A. § 1291 (West 1993), which provides that the courts of appeals "shall have jurisdiction of appeals from all final decisions of the district courts of the United States." A "final" judgment is one "that ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 467 (1978) (internal quotation marks omitted). "In the criminal context, finality comes with the conviction and imposition of sentence." *United States v. Moussaoui*, 333 F.3d 509, 514 (4th Cir. 2003) (internal quotation marks omitted).

The Supreme Court has long given the "finality" requirement of § 1291 a practical construction rather than a technical one. *See Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949). To this end, the Court has identified "a narrow class" of collateral orders "that do not terminate the litigation, but must, in the interest of achieving a healthy legal system, nonetheless be treated as final." *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 867 (1994) (internal quotation marks & citation omitted); *see id.* at 867-68 ("Immediate appeals from such orders . . . do not go against the grain of § 1291, with its object of efficient administration of justice in the federal courts." (citation omitted)). Such decisions are immediately appealable.

The collateral order doctrine provides that to be subject to immediate appeal, a ruling of the district court "must conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment." *Coopers & Lybrand*, 437 U.S. at 468. In the criminal context, we apply these requirements "with the utmost strictness." *Flanagan v. United States*, 465 U.S. 259, 265 (1984); *see United States v. Lawrence*, 201 F.3d 536, 537 (4th Cir. 2000) ("Piecemeal or interlocutory appeals are disfavored in the federal courts, especially in criminal cases.").

In *Ferebe*, this court held that an order denying a motion to strike a death notice for failure to file a reasonable time before trial is imme-

diately appealable under *Cohen*. *See Ferebe*, 332 F.3d at 726. This holding was based largely on the conclusion that § 3593(a) establishes "a prophylactic [right to] reasonable notice before trial." *Id.* at 727 (emphases omitted); *see id.* (stating that the "purpose [of § 3593(a)] is to ensure that the accused will not be required to stand trial for his life without having received adequate notice before that trial that he *is* to stand trial for [a] capital offense"). The *Ferebe* majority thus concluded that the right guaranteed by § 3593(a) is akin to the right not to be tried in violation of the Double Jeopardy Clause. *See id.* at 729.

Here, unlike in *Ferebe*, Appellants moved not to strike a death notice that had been filed, but rather to preclude the Government from filing a death notice at all. Had the district court denied this motion at any time prior to the filing of the death notice, we would have lacked jurisdiction over an interlocutory appeal of that decision. An order denying a motion to prohibit is necessarily speculative, because it leaves open the question of whether a death notice will be filed a reasonable time before trial. In other words, after the denial of a motion to prohibit the possibility remains that the district court will determine that a subsequently filed death notice was untimely. Such an order "leave[s] the matter open, unfinished or inconclusive" and therefore fails the first prong of the collateral order doctrine. *Abney v. United States*, 431 U.S. 651, 658 (1977) (internal quotation marks omitted); *cf. Ferebe*, 332 F.3d at 727 (concluding that an order denying a motion to strike and scheduling the case for trial satisfied the first prong of the collateral order test because it "fully dispose[d]" of the question).

However, the district court waited to rule on the motion to prohibit until after the death notice had been filed, and at that point treated the motion to prohibit as though it were actually a motion to strike. The district court acted properly in doing so. Waiting to rule until the death notice had been filed avoided the possibility, described above, of additional litigation being engendered by a denial of the motion to prohibit followed by the filing of a death notice and a motion to strike. Additionally, delaying a ruling allowed for the possibility that the Government would elect not to seek the death penalty.

The consequence of the delay by the district court was that the motion to prohibit was effectively transmuted into a motion to strike.

The denial of this motion by the district court is appealable under *Ferebe*. Accordingly, we possess jurisdiction.

III.

Analysis of whether the right to reasonable notice has been violated requires an inquiry into the objective reasonableness of the timing of the notice. *See Ferebe*, 332 F.3d at 731. Objective reasonableness is a question of law, and as such is subject to de novo review. *See, e.g.*, *United States v. Carpenter*, 341 F.3d 666, 668 (8th Cir. 2003) (reviewing de novo question of whether law enforcement officer's reliance on warrant was objectively reasonable); *Altman v. Bedford Cent. Sch. Dist.*, 245 F.3d 49, 75 (2d Cir. 2001) (stating that district court application of objective standard is reviewed de novo).

In *Ferebe*, the court set forth a non-exhaustive list of factors to consider in determining whether a death notice is filed an objectively reasonable time before trial:

> To judge an accused's challenge to the reasonable timeliness of a Death Notice requires evaluation of, among other factors that may appear relevant, (1) the nature of the charges presented in the indictment; (2) the nature of the aggravating factors provided in the Death Notice; (3) the period of time remaining before trial, measured at the instant the Death Notice was filed and irrespective of the filing's effects; and . . . (4) the status of discovery in the proceedings.

*Id.* at 737 (footnote omitted). The district court premised its application of these factors on its determination that the relevant dates for the analysis were July 15, 2003 (the date the death notice was filed) and February 9, 2004 (the then-scheduled trial date). With respect to the nature of the charges, the court concluded that the factual and legal issues surrounding the prosecution were not so complex as to render seven months notice objectively unreasonable. The court reached the same conclusion regarding the aggravating factors, concluding that they were "typical." J.A. 206. Regarding the third factor—the time between the filing of the death notice and the trial—the court ruled that seven months was an adequate amount of time to prepare for a capital trial. Similarly, regarding the status of discovery, the court

determined that seven months was an adequate amount of time to complete analysis of the evidence.

Appellants' challenge to the ruling of the district court concerns only the third prong of the analysis. Appellants contend that the district court erred in basing its analysis on the July 15 filing of the death notice and the February 9 trial date, maintaining that the district court should have looked at the 41-day period between their filing of the motion to prohibit—June 3—and the trial date as of the filing of that motion—July 14. We conclude that the district court based its analysis on the correct dates.

### A.

As we have already noted, the district court correctly delayed ruling on the motion to prohibit until after the death notice had been filed; at this point, as earlier stated, the motion to prohibit was effectively transmuted into a motion to strike. *Ferebe* is quite explicit that the time frame for determining the objective reasonableness of a death notice begins on the date the death notice is filed. *See Ferebe*, 332 F.3d at 737 & n.6. Therefore, the starting date employed by the district court was correct.

### B.

On the date the Government filed the death notice, the trial was scheduled for February 9, 2004, and this was the ending date used by the district court in determining whether the death notice was filed a reasonable time before trial. Appellants contend that the district court erred in using this date because the granting of the Government's motion for continuance was an abuse of discretion. *See United States v. Stewart*, 256 F.3d 231, 245 (4th Cir. 2001) (stating standard for reviewing ruling on motion for continuance). The Government argues, however, that because we do not have an independent basis for jurisdiction over the order granting the continuance, we must assume the validity of the continuance in deciding this appeal.

We agree with the Government that an order granting or denying a continuance is not a "final order" for purposes of the collateral order

doctrine because it can be effectively reviewed post-judgment. *Compare Coopers & Lybrand*, 437 U.S. at 468 (stating that a collateral order is one that, *inter alia*, is "effectively unreviewable on appeal from a final judgment"), *with Stewart*, 256 F.3d at 244-46 (reviewing, post-trial, a denial of a motion for continuance). Therefore, we are not at liberty to review the propriety of the granting of the continuance.[3]

Under the circumstances existing at the time the death notice was filed—namely, a scheduled trial date of February 9, 2004—the district court did not err in denying the motion to strike. Indeed, Appellants concede as much.

                              IV.

For the reasons set forth above, we affirm the order of the district court.

                                            *AFFIRMED*

WIDENER, Circuit Judge, concurring and dissenting:

I concur in the result and in all of the majority opinion except Part III. B.

Part III. B decides that the grant of a continuance should be considered separately, is not a final order, and so is not subject to review in this appeal.

I agree that the grant or denial of a continuance is ordinarily not an order subject to interlocutory review, but in *U.S. v. Ferebe*, 332 F.3d 722 (4th Cir. 2003), we decided that the government's giving of notice in a federal death penalty case is subject to interlocutory review to ascertain whether the death penalty notice under 18 U.S.C. § 3593(a) has been given "a reasonable time before the trial or before acceptance by the court of a plea of guilty." As the majority opinion

---

[3]We express no opinion regarding whether the continuance was properly granted. Further, we leave open the question of what remedy would be available to Appellants if, on appeal, the continuance were to be declared improper.

relates, the answer to that question is determined by whether the notice "is filed an objectively reasonable time before trial." Slip p.6.

In the case at hand, the contention of the defendants is that the death penalty notice given 31 days before trial is objectively unreasonable. Br. p.i. To reach that conclusion, the defendants argue that the continuance granted by the court from July until February, a period of some seven months, enabled the government to give the death notice an objectively reasonable time before trial when the government had forfeited any right to give the death notice by not so doing in order that the trial could proceed on July 14, 2003 as previously scheduled. Because the granting of the continuance is necessarily relevant to the time the death notice was given, I think that question is reviewable under *Ferebe*. And, in my opinion, the contention of the defendants is without merit.

As noted, the case was first set for trial on March 18, 2003. Then, on the March 6, 2003 motion of Cassell, a new trial date was set, on March 12, 2003, for July 14, 2003, some four months later. All of the defendants joined in this request, and the government did not object to the continuance from March 18, 2003 until July 14, 2003.

On June 4, 2003, Breeden, and on June 6, Cassell, moved to bar the government from seeking the death penalty, which motion was joined by Carpenter on June 13, 2003. On June 20, 2003, the government moved for a continuance of the July 14, 2003 trial date, and, on July 15, 2003, filed its notices to seek the death penalty. On July 7, 2003, the district court continued the case until February 9, 2004, and at that time, it related in that order, which relation has not been objected to then or now.

> The defendants and the government then informed the court that they could not be prepared for a death penalty case before February 9, 2004. A.141.

The district court based its decision on stated facts that there were a number of items of evidence still being analyzed at the forensic laboratory in Richmond; that a bullet taken from the body of the victim was being analyzed at the same laboratory to ascertain if the gun had been used in other crimes; that the government was in the process of

gathering evidence of two robberies that had occurred immediately before the murder; and that the government expected to complete its investigation and turn over relevant discovery to the defendants in the next few weeks. The district court then concluded that a failure to grant such a continuance would deny counsel for the defendants and the attorney for the government the reasonable time necessary to effectively prepare for trial, taking into account the exercise of due diligence.

The findings of the district court are contested by way of argument, but the record does not show factual inaccuracies of any consequence in the evidence considered by the district court when it made its decision to continue the trial until February. For example, the statement by the defendants' attorneys to the district court, noted in that court's order of July 7th, that they could not be prepared for a death penalty trial before February 9th, would alone support the conclusion of the district court that a failure to grant the continuance until February would deny the defendants' attorneys the reasonable time to effectively prepare for trial.*

I am thus of opinion that the defendants have not shown that the district court abused its discretion in granting the continuance and would so hold.

---

*Indeed, the defendants' July 7th position, that seven months were needed to prepare for trial, is entirely inconsistent with the March 13th continuance of the trial date until July 14th, a period of some four months. The July 7th position of the attorneys, that seven months were needed to prepare for trial, is proof certain that they could not have been prepared for trial on the July 14th date and exposes the fallacy of the argument now made to support the appeal.