**UNITED STATES of America,**
**Plaintiff,**

v.

**Kenneth WILK a/k/a "Wolfpackeines,"**
**Defendant.**

No. 04–60216–CR

United States District Court,
S.D. Florida.

April 27, 2005.

Jose Rafael Rodriguez, Miami, FL, William Donald Matthewman, Seiden, Alder & Matthewman, Boca Raton, FL, for Defendant.

John Steven Kastrenakes, AUSA, Antonia J. Barnes, AUSA, Bruce Reinhart, AUSA, U.S. Attorney's Office, West Palm Beach, FL, Neil Karadbil, AUSA, Bruce Brown, AUSA, U.S. Attorney's Office, Fort Lauderdale, FL, for Plaintiff.

### ORDER RE: TIMELINESS OF DEATH NOTICE UNDER 18 U.S.C. § 3593(a)

COHN, District Judge.

**THIS CAUSE** is before the Court on Defendant, Kenneth Wilk's Motion to Strike Government's "Notice of Intent to Seek the Death Penalty" and For An Order Barring the Government Form Seeking the Death Penalty, Due to Failure to Provide Reasonable Notice of Intent to Seek the Death Penalty Prior to Trial filed on March 8, 2005 [D.E. # 320] and his subsequent Motion to Strike the Government's Amended Notice of Intent to Seek the Death Penalty filed on March 31, 2005 [D.E. # 438].

The Court has considered the motions, the government's response [DE # 393], Defendant's reply [DE # 420], Defendant's Motion For An Immediate hearing on his "Motion to Strike the Government's Amended Notice of Intent to Seek the Death Penalty" [DE # 443], the record, the applicable law, and is otherwise duly advised in the premises.

In the pending motions, the Defendant challenges the timeliness of the filing of the government's Notice of Intent to Seek the Death Penalty and its Amended Notice. The Defendant alleges that the government's Notice and Amended Notice were not filed a reasonable amount of time before trial as required by 18 U.S.C. § 3593(a), and therefore must be stricken and the government barred from seeking the death penalty.

## I. FACTUAL AND PROCEDURAL HISTORY

On August 19, 2004, Broward Sheriff's Deputy Todd M. Fatta was fatally shot while assisting a federal agent in the execution of an arrest and search warrant at the Defendant's residence. On the same day, Defendant Kenneth Wilk was arrested on charges of conspiracy to obstruct justice and conspiracy to possess child pornography. The following day, a federal magistrate appointed attorney J. Rafael Rodriguez, who has extensive experience in capital crimes litigation, to represent the Defendant. On August 26, 2004, Defendant Wilk was indicted in a five-count Indictment that charged him with non-capital offenses [DE # 16], and was arraigned on the Indictment on September 1, 2004. On September 2, 2004, the Court set a trial date of November 1, 2004 [DE # 25].

On September 9, 2004, AUSA John Kastrenakes advised attorney Rodriguez of a meeting scheduled for October 18, 2004 with the Department of Justice, Capital Crimes Unit to review the Wilk case. Prior to this scheduled meeting, on September 22, 2004, Mr. Rodriguez made a presentation to the United States Attorney's Office for the Southern District of Florida regarding the propriety of capital punishment for Defendant Wilk. On October 14, 2004, United States Magistrate Judge Lurana S. Snow, upon the *ex parte* request of attorney Rodriguez, appointed William Matthewman as second counsel pursuant to Title 18, United States Code § 3005. This was based on Mr. Matthewman's qualifications to handle federal death penalty cases due to the probability of this becoming a capital case. After his appointment, attorney Matthewman requested postponement of the scheduled October 18, 2004 meeting in Washington, D.C. with the Capital Crimes Unit, which was re-

scheduled by the government to November 1, 2004.

Subsequently, on October 21, 2004, Wilk was indicted in a six-count Superseding Indictment, which included two counts of capital murder [DE # 70]. He was arraigned on this Indictment on October 28, 2004 [DE # 81]. At a status conference held the same day, the Court granted Defendant's October 15, 2004 motion to continue the trial, resetting it to April 18, 2005.

The scheduled November 1, 2004 meeting in Washington, D.C. was postponed a second time at defense attorney's request and was rescheduled by the government to December 13, 2004. The meeting with the Capital Case Unit finally took place on this rescheduled date in Washington, D.C., during which Defense attorneys Matthewman and Rodriguez made a presentation on behalf of their client regarding the Department's death penalty determination.

On January 28, 2005, a status conference was held before this Court, where the government was given a deadline of February 18, 2005 to file a Notice of Intent to Seek the Death Penalty pursuant to 18 U.S.C. § 3593. The Court entered a written Order following the conference, in which it specifically stated that "should the government seek the death penalty in this case, notice must be provided in accord with 18 U.S.C. § 3593(a) no later than February 18, 2005" [DE # 171]. At the status conference, the Court also asked the government to give counsel, by way of a letter, a preliminary list of non-statutory aggravating circumstances upon which they would probably rely in pursuing the death penalty. The statutory aggravators had been previously provided on October 21, 2004 in the "Notice of Special Findings" section of the Superseding Indictment. The non-statutory aggravators that the government believed applied to the case were provided

by the government in a letter sent to attorneys Matthewman and Rodriguez on February 4, 2005.

On February 10, 2005, a status conference was held before United States Magistrate Judge Snow to set the motion filing schedule. Judge Snow set a deadline of February 16 for the filing of defense motions, February 25 for the filing of the government's responses, and the week of February 28, 2005 for hearings on the motions. At this conference, Magistrate Judge Snow told the Defendant that the case should be treated as if it were a death penalty case. Also on this date, attorneys Matthewman and Rodriguez requested of the government that they be allowed to make a presentation to United States Attorney Marcos Jimenez, regarding the Office's decision to seek the death penalty; the meeting was set for February 18, 2005.

On the morning of February 18, Matthewman and Rodriguez indeed made their presentation at the United States Attorney's Office in opposition to the filing of a death notice. At the close of the meeting, AUSA Bruce Brown and First AUSA Thomas Mulvihill informed defense counsel that the government would be filing a Notice of Intent to Seek the Death Penalty that day. The government filed the Death Notice with the Court on the afternoon of February 18, 2005, in compliance with the deadline imposed by the Court [DE # 246]. However, defense counsel did not receive a copy of the Death Notice by mail until February 24, 2005; the notice had been postmarked with a mailing date of February 22, 2005, which the government explains occurred as a result of the Presidents Day Weekend. In addition, notice was never personally served on the Defendant.

On February 24, 2005, United States Magistrate Judge Snow held a hearing, during which the government announced

that, based on instructions from the Attorney General, an additional count charging Defendant Wilk with the murder of a state law enforcement officer assisting a federal investigation, in violation of 18 U.S.C. § 1121, would be sought in a Superseding Indictment. On March 10, 2005, the government obtained and filed the second Superseding Indictment, which added a new Count I charging the Defendant with the murder of a state law enforcement officer assisting a federal investigation [DE # 334]. This new count was based on the same facts as the two prior counts relating to the unlawful killing of Deputy Fatta and offered no new or novel theory, which would have required additional preparation. Aside from the adding of Count I, the prior Indictment was unchanged, except for the renumbering of the remaining counts and setting forth Counts I, II, and IV as the three capital counts of the second Superseding Indictment in the Notice of Special Findings. There was also no change relating to the statutory aggravators of the capital counts.

Having obtained a second Superseding Indictment, the government sought leave to amend the notice of intent to seek the death penalty. On March 29, 2005, the Court entered an Order granting the government's motion to file an amended death notice [DE # 421]. In its Order, the Court noted that the proposed amended notice was identical to the prior notice except that it added language relating to the new charge in the second Superseding Indictment. Finding that the government sought to amend its prior notice to accurately reflect the added charge and given that the notice should conform with the indictment, the Court ruled that the existence of good cause permitted the filing of the amended notice pursuant to 18 U.S.C. § 3593(a).

On March 30, 2005, at the request of the parties, the Court held a status conference [DE # 419]. During the conference, the government inquired into the realistic nature of the April 18 trial date, setting forth the discovery issues still unresolved. After hearing from both sides, the Court determined that the interests of justice required a continuance of the trial until August 29, 2005.

## II. DISCUSSION

### A. Analytical Framework

In his motions, Defendant Wilk argues that the government's notice of intent to seek the death penalty and amended notice should be stricken because the government failed to provide reasonable notice prior to trial. In criminal prosecutions where the offense charged is punishable by death, the Federal Death Penalty Act requires the Government to provide notice of its intent to seek the death penalty a reasonable time before trial. 18 U.S.C. § 3593(a) states in relevant part as follows:

> If ... the attorney for the government believes that the circumstances of the offense are such that a sentence of death is justified under this chapter, the attorney shall, a reasonable time before the trial or before acceptance by the court of a plea of guilty, sign and file with the court, and serve on the defendant, a notice—
>
> (1) stating that the government believes that the circumstances of the offense are such that, if the defendant is convicted, a sentence of death is justified under this chapter and that the government will seek the sentence of death; and
>
> (2) setting forth the aggravating factor or factors that the government, if the defendant is convicted, proposes to prove as justifying a sentence of death

Recently, the Fourth Circuit considered the issue regarding the timeliness of a death notice in *United States v. Ferebe,* and established an analytic framework by which to evaluate its reasonableness. 332 F.3d 722 (4th Cir.2003). In *Ferebe,* the defendant challenged the district court's decision not to strike the Death Notice on the grounds that he did not receive the Notice within a reasonable time before trial, as required by 18 U.S.C. § 3593(a). *Id.* at 724. The divided panel determined that § 3593 is a "prophylactic statute, one of the chief aims of which is to protect the accused from having to endure a trial for his life for which he was not on reasonable notice" and "require[s] an inquiry into the objective reasonableness of the time between issuance of the Death Notice and the trial itself." *Id.* at 727. In other words, a defendant's rights are denied at the point when he proceeds toward trial, or actually to trial, in the absence of a reasonable time between his receipt of the Death Notice and his capital trial. *Id.* at 732. To this end, the Court stated that *"this is so, regardless of whether he will or will not be, or was or was not, prejudiced by an unreasonably delayed Death Notice." Id.* (emphasis in original). Therefore, the court determined that the proper analytical framework involves conducting "a pretrial inquiry into the objective reasonableness of the notice provided," rather than a post-trial assessment of the prejudice to the accused. *Id.* at 727.

■ To ascertain whether the time between the issuance of the Death Notice and the trial is objectively reasonable, *Ferebe* sets forth the following factors to be considered among other factors that may appear relevant: (1) the nature of the charges presented in the indictment; (2) the nature of the aggravating factors provided in the Death Notice; (3) the period of time remaining before trial, measured at the instant the Death Notice was filed and irrespective of the filing's effects; and, in addition, (4) the status of discovery in the proceedings. *Id.* at 737. This is a non-exhaustive list of factors for courts to consider and no single factor is dispositive. *United States v. Breeden,* 366 F.3d 369, 374 (4th Cir.2004); *United States v. Ponder,* 347 F.Supp.2d 256, 263 (E.D.Va.2004).

### B. Objective Reasonableness—*Ferebe* Factors

■ In applying the *Ferebe* factors to the instant case, the first question the Court must answer is which trial date to use when measuring the reasonableness of the timing of the notice—April 18 or August 29. The Court concludes that the August 29 trial date should be used because the court "properly continued the trial under the Speedy Trial Act" for reasons unrelated to the government's filing of the Death Notice and the Amended Death Notice. *Breeden,* 2003 WL 22019060, *2. Therefore, the timeliness of the Death Notice and the Amended Death Notice must be gauged in relation to the properly rescheduled trial date.

The Court's decision to continue the trial date was motivated by several factors that the parties raised during the status conferences held on March 30 and April 1, 2005. First, the pretrial work-up of this case raised some concerns. As the government related at the March 30 status conference, "every other motion is claiming a lack of notice, lack of due process, lack of legal [sic] protection." (*See* transcript, DE # 468, at p. 10). Secondly, at the time of the conferences, Defendant Wilk had made no Rule 12.2(b) disclosure of mental health-related experts, although mention had been made of a defense based on AIDS dementia. Thirdly, the Defendant had yet to disclose any experts even though defense counsel had hired and con-

sulted with at least a dozen experts. Obviously, in a case such as this, the Court would be reluctant to even consider striking a defense expert based on failure to provide timely notice. Thus, the Court realized that this would put the government at an extreme disadvantage just 20 days before the scheduled April 18 trial date. Fourthly, just five days prior to the March 30 status conference, the Defendant had filed a *Daubert* motion asking the Court to exclude all expert testimony being offered by the government.[1] It was unknown at the time of the conference which experts' testimony would require an evidentiary hearing to determine admissibility. In addition, the matter would not be fully briefed until April 11, one week before trial.[2]

Decisions post-*Ferebe* have taken into consideration whether a scheduled trial date was continued for reasons independent of the Death Notice. In *Breeden*, the court employed the continued trial date when conducting its *Ferebe* analysis. 2003 WL 22019060. The court interpreted the *Ferebe* language stating that courts should consider the period of time before trial, measured at the instant the Death Notice was filed and "irrespective of the filing's effects," 332 F.3d at 737, to mean that a court cannot continue a case for the purpose of allowing the government to file a timely Death Notice. *Id.* at *2. However, if the court properly continues the case for reasons unrelated to the filing of the Death Notice, then the court should judge the timeliness of the Death Notice in rela-

tion to the properly scheduled trial date. *Id.* Having continued the trial for reasons unrelated to the Death Notice, specifically so that the forensics lab could fully analyze the evidence, the *Breeden* court used the continued trial date rather than the originally-scheduled trial date for *Ferebe* purposes.

Similarly, in *United States v. Le*, the Court continued the trial date for several reasons, chief among which was the fact that only ten days prior to the scheduled trial date, there remained unresolved more than thirty pretrial motions. 311 F.Supp.2d 527, 533 (E.D.Va.2004). The Court concluded that the originally-scheduled trial date "should not be used to measure the period of time remaining before trial ... because that date was cancelled for a variety of reasons, including reasons unrelated to, and independent of, any potential Death Notice." *Id.*

In *Ponder*, the court also determined that the pertinent inquiry involved examining whether a trial date is continued in order to rescue an untimely Death Notice. 347 F.Supp.2d at 267. Accordingly, the court examined whether the case was actually going to trial on the scheduled trial date and whether the reason the trial was continued had to do with the filing of the Death Notice. The court ultimately continued the case because of the nature of the evidence, which involved DNA evidence, and the slow pace of discovery. *Id.* at 270. The court also noted that in reviewing the transcript of the status confer-

---

1. Thus far, the government has listed nine expert witnesses.

2. At the status conference and in his motion for an immediate hearing, Defendant claimed that if the death notice were stricken by the Court, he would be ready to try a non-death penalty first degree murder case on April 18th. The Court finds this representation to be a convenient buttress to his *Ferebe* reason-

ableness argument and will not entertain it in its analysis. *See Ponder*, 347 F.Supp.2d at 269 (finding that defense counsel's position that it was ready to proceed if the case were tried as a non-death penalty murder trial "was a backhanded attempt to render the Death Notice untimely, a tactic the Court will not condone.")

ence held approximately six weeks before trial, which primarily addressed the practicality of the scheduled trial date, "there was no question that, regardless of whether the Government ultimately decided to seek the death penalty, a continuance would be granted so that *both parties* would have adequate time to prepare for trial, and in particular so that the defense would have ample time to prepare." *Id.* at 269.

As in *Ponder, Le,* and *Breeden,* the Court continued the case for a variety of reasons unrelated to the timing of the Death Notice. Therefore, the Court concludes that the August 29 trial date is the appropriate date for applying the following *Ferebe* factors.

*1. The Interval Between the Filing of the Death Notice and the Trial Date*

■ Under *Ferebe,* courts must examine "the period of time remaining before trial, measured at the instant the death Notice was filed and irrespective of the filing's effects." *Ferebe* 332 F.3d at 737. In calculating this interval, the Court must consider two dates: the date the Death Notice was formally filed and the trial date. *See United States v. Hatten,* 276 F.Supp.2d 574, 579 (S.D.W.Va.2003).

Using the August 29 trial date, over six months exist between the filing of the Death Notice and the trial date. The Court finds this to be a reasonable amount of time under § 3593(a). *See Breeden,*

2003 WL 22019060, *3 (calculating a period of six months and twenty-five days between the filing of the Death Notice and the trial date and finding that "no court has suggested that a period of nearly seven months is unreasonable."). Additionally, the Court notes that even Mr. Matthewman agreed on the record that "[a] reasonable time is at least six months prior to trial." (*See* January 28, 2005 transcript, DE # 461, at p. 7).

Though the Court finds that the August 29 trial date should be the date used in analyzing the *Ferebe* factors, in order to provide a thorough analysis, the Court will examine the reasonableness of the Death Notice filed using the April 18 trial date. Using this date, two months existed between the filing of the Death Notice and the trial date. However, the Court established this schedule in advance, having ordered the government to file its Death Notice by February 18.[3] (*See* DE # 171). The Court set this deadline because it found it would provide Defendant notice of the government's intent to seek the death penalty a reasonable amount of time before trial. Therefore, by setting this deadline in advance, the January 28, 2005 Order became a prophylactic measure as the term is used in *Ferebe*. As such, it complies with the reasonable notice requirement of 18 U.S.C. § 3593(a) and *Ferebe's* interpretation of § 3593(a) as a prophylactic statute

**3.** Defendant argues that the government did not comply with the Court's deadline because it did not mail the Death Notice to counsel until February 22 so that it was not received until February 24, 2005. The government partially attributes this delay to the Presidents Day Weekend. Though the Court does not condone the government's delay in mailing its notice, it finds that notice was indeed provided to defense counsel on April 18th. At the close of the meeting held on February 18 at the United States Attorney's Office, AUSA Bruce Brown and First AUSA Thomas Mulvihill personally informed defense counsel that the government would be filing a Notice of Intent to Seek the Death Penalty that day. The Death Notice was indeed filed with the Court on the afternoon of April 18, 2005. In addition, there is no statutory requirement of personal service as opposed to service on the Defendant's duly appointed counsel.

### 2. The Nature of the Charges

*Ferebe* also instructs courts to consider the "nature of the charges presented in the indictment." 332 F.3d at 737. However, "[i]t is not altogether clear how this factor should be weighed or in which direction observations regarding this factor should cut." *Ponder,* 347 F.Supp.2d at 263. As stated by the district court in *Ponder,* "rather than provide precise guidance on the contours of § 3593, *Ferebe* 'provides an elucidation, or more precisely, an elaboration of the statute.'" *Id.* at 262 (*citing United States v. Le,* 311 F.Supp.2d 527, 531 (E.D.Va.2004)). Decisions interpreting *Ferebe,* however, help to elucidate the application of the four factors.

In *Ponder,* for instance, the Court clarified that cases applying *Ferebe* had taken the following two approaches in analyzing the first factor: (1) considering the time between the filing of the Death Notice and the scheduled trial date to determine whether the defendant would have an adequate time to prepare a defense; or (2) consider whether the timing was reasonable from the perspective of the government. *Id.* (discussing *United States v. Le,* 311 F.Supp.2d 527 (E.D.Va.2004) and *United States v. Hatten,* 276 F.Supp.2d 574 (S.D.W.Va.2003)). The *Ponder* court adopted the second approach, which involved considering whether the timing of the Death Notice was reasonable from the perspective of the government given the nature of the charges in the indictment. *Id.* at 263–64. In other words, the court examined whether the government should have filed the Death Notice earlier than it did given the nature of the charges in the indictment and the status of the discovery and inspection process.

Applying either approach, the Court finds that the timing of the Death Notice was reasonable under both trial dates. With respect to whether Defendant Wilk would have a reasonable amount of time to prepare his death defense given the nature of the charges, the charges involved are not as complex as asserted by the Defendant. The homicide charges are rather basic; only the obstruction of justice and pornography allegations, which form part of Defendant's intent, involve any degree of intricacy. Thus, two months, let alone six months, would be sufficient time to prepare a defense.

Taking the perspective of the government in the second approach, the Court finds that the government need not have filed the Death Notice earlier than it did. First of all, the Court notes that the government filed its notice by the court-established deadline of February 18. In addition, as the government points out, Defense counsel twice requested that the meeting with the Capital Crimes Unit be continued. The meeting had originally been scheduled for October 18, 2004, and was extended first to November 1 and then to December 13, 2004. Thus, of the nearly four months it took from the time of the first Superseding Indictment to the time the government filed the Death Notice, nearly two months were expended before the attorneys for the Defendant and the Department of Justice met in Washington. The Court finds that the government did not intentionally delay in filing the Death Notice.

### 3. The Nature of the Aggravating Factors

A third *Ferebe* factor involves analyzing the nature of the aggravating factors provided in the Death Notice. Again, possibly bewildered as to how to apply this factor, courts post-*Ferebe* have approached the analysis differently, some from the government's perspective and others from the defendant's. *See Ponder,* 347 F.Supp.2d at 265 (considering the government's tim-

ing in filing the Death Notice); *Le*, 311 F.Supp.2d at 535 (inquiring into whether defendant had sufficient time to prepare for trial given the nature of the aggravating factors); *Breeden*, No. CR. 3:03CR00013, 2003 WL 22019060, *3 (W.D.Va.2003) (interpreting the factors in light of defendant's ability to prepare for trial); *Hatten*, 276 F.Supp.2d at 578 (analyzing the government's timing and delay in filing the Death Notice). In *Ponder*, the court again noted that "[t]he same confusion described above about how to approach the first *Ferebe* factor exists with regard to how to evaluate this one." 347 F.Supp.2d at 265–66.

Here, the aggravating factors merely track the statute's language and are reflective of the same facts that are in the homicide charges themselves. The Court finds that Defendant Wilk could have adequately prepared his death defense in two months, let alone six, given the nature of the aggravating charges and the prior notice provided in the first Superseding Indictment "Notice of Special Findings" section filed on October 21, 2004. Taking the perspective of the government, there is nothing about the nature of the aggravating factors to suggest that the government should have acted sooner to file the Death Notice especially in light of the Court's *ordered* deadline.

### 4. The Status of Discovery in the Proceedings

The fourth *Ferebe* factor directs courts to consider "the status of discovery in the proceedings." 332 F.3d at 737. The Court finds that discovery will undoubtedly be completed long before the August 29 trial date. With respect to the April 18 trial date, the incomplete status of the discovery was indeed one of the reasons for the continuance and further supports the Court's use of the August date as the operative trial date for *Ferebe* purposes. However, in analyzing the April trial date, even though the incomplete status of discovery weighs in favor of the Defendant, the Court finds that this factor alone is insufficient to overcome the weight of the remaining factors. In addition, the Court notes that although the trial was continued due, partially, to discovery issues affecting both sides, discovery was mostly complete from the government's side. At the time of the March 30 status conference, Defendant had yet to disclose any defense experts or produce any mental health evidence even though the Defendant had consulted at least a dozen experts.[4]

### 5. Other Factors

Since *Ferebe* did not set forth an exhaustive list of factors for courts to consider, the Court will mention other factors that it determines relevant to the reasonableness analysis. *See Breeden*, 366 F.3d 369, 374 ("In *Ferebe*, the court set forth a non-exhaustive list of factors ..."); *Ponder*, 347 F.Supp.2d at 263. *Ferebe* maintains that a defendant has a substantive right not to be tried for a capital sentence without receiving reasonable notice. Objective reasonableness must consider what transpired in the case prior to the filing of the death notice. Here, the Court notes that in its first Superseding Indictment of October 21, 2004, the government included a section titled "Notice of Special Findings." This section listed the statutory aggravating factors that were later relied upon in the Death Notice. The government was not required to include this sec-

---

4. Obviously, the Court recognizes that the Defendant could elect not to use any experts or offer mental health evidence in his defense.

tion in the Indictment, but by including it, the Court finds that Defendant was put on notice of the statutory aggravating factors justifying a death sentence.

Therefore, after applying the *Ferebe* factors, the Court finds that the government provided its Death Notice a reasonable amount of time before trial based on either an April 18 or August 29 trial date.

### C. The Amended Death Notice

■ With respect to the Amended Notice, the government sought to amend the death notice to reflect the changes made in the second Superseding Indictment returned on March 10, 2005. On March, 29, 2005, the Court granted the government's motion to amend the death notice, finding the existence of good cause pursuant to 18 U.S.C. § 3593(a). Given that the Court has determined that the trial date to be used is August 29, 2005, the Amended Death Notice, which was granted by the Court on March 29, 2005, was filed five months prior to the trial date. The Court finds this to be reasonable notice. Employing the April 18 trial date, however, the Amended Death Notice appears on its face to be somewhat problematic in that it was filed 20 days prior to the April 18 trial date. Nevertheless, as the Court noted in its Order granting the amendment, the second Superseding Indictment did not change the Notice of Special Findings relating to the statutory aggravators for the capital counts. In addition, the proposed amended notice did not change the non-statutory aggravators of the prior notice. In fact, the proposed amended notice is identical to the prior notice except that it includes language relating to the added charge in the second Superseding Indictment of murder of a state law enforcement officer assisting a federal investigation. The added charge was based on the same

facts as the two former capital counts and required little or no additional preparation.

Thus, the Court finds that there has been no change in the statutory aggravators since the filing of the first Superseding Indictment on October 21, 2004. As such, the filing of the amended notice 20 days before trial does not affect the reasonableness analysis under *Ferebe*. Having found that the filing of the Death Notice two months before trial on February 18 was reasonable and that the Amended Death Notice did not change the statutory aggravators, the Court finds that Amended Notice also meets the reasonableness requirement of § 3593(a).

### D. *Ferebe's* Value in the Eleventh Circuit

The *Ferebe* opinion does not consider the element of prejudice to the Defendant in its analysis of the reasonableness of the filing of the Death Notice. Judge Niemeyer in his dissent ably discusses the weakness in the majority's opinion:

> In sum, we are presented in this appeal with a pretrial order denying a defendant's motion to strike a death penalty notice made on the ground that it was not given a "reasonable time before the trial." 18 U.S.C. § 3593(a). Yet, the trial that is referred to in the statute has not even as of now commenced, much less been completed. Because there has been no trial, no one can conclusively determine whether the notice was given a *reasonable* time before trial. Moreover, no one can state whether the defendant was adversely affected in any way by a notice which cannot even be denominated "late."

*Ferebe*, 332 F.3d at 750. *Ferebe* "freezes the inquiry into the reasonableness of timing as of the time the notice is filed and presents the district court, in effect, with only the options of striking the notice or

not striking the notice. It denies the court any flexibility in managing the period of trial preparation by scheduling or postponing trial to give the defendant a reasonable time to prepare." *Id.* at 749.

This is an issue of first impression in the Eleventh Circuit. The Fourth Circuit, in a 2 to 1 decision, said that the defendant has a substantive right not to be tried for a capital sentence without having received reasonable notice, and that the issue of prejudice to the accused cannot be considered in determining the objective reasonableness of the notice provided. Does 18 U.S.C. § 3593(a) afford a defendant a procedural guarantee that he will be given adequate time to prepare for a death penalty trial or a substantive right not to be tried for a capital sentence absent reasonable notice? Is prejudice a proper consideration in determining the reasonableness of the death notice? These are questions which have not been addressed by our Circuit. This Court believes that the better-reasoned position includes a prejudice analysis.

■ Since the Court questions whether this Circuit will adopt a standard that does not take into account the issue of prejudice to the Defendant, the Court finds it relevant to engage in a prejudice analysis. In this case, it was not surprising that the government, in fact, filed a Death Notice. From the Defendant's first court appearance before United States Magistrate Judge O'Sullivan, the day following the fatal shooting of Deputy Fatta, the specter of the death penalty has blanketed this case like a thick fog.

The Court, in setting a deadline for the filing of the Death Notice, considered the degree of preparation for a penalty phase already undertaken by the Defendant. In

this regard, the Court notes that two death qualified attorneys were appointed to represent the Defendant—one on August 20, 2005 and the second on October 14, 2005. Through ex parte motions, defense counsel have requested funds to hire a total of twelve expert witnesses. All but one request was granted.[5] To date, the Court has authorized the expenditure of over $145,000 for experts, an investigator, and other litigation-associated expenses. Additionally, over 60 motions have been filed by the Defendant. The death penalty has been addressed at each status conference held by this Court, beginning in October 2004. United States Magistrate Judge Lurana S. Snow, who has heard almost all of the pretrial motions, advised defense counsel early on to consider this a death penalty case. Moreover, at the January 28 status conference, the Court discussed with the parties the written juror questionnaires to be mailed out January 31, and specifically included numerous questions addressing the death penalty and jurors' attitude toward the death penalty. For defense counsel to now suggest surprise strikes this Court as being opportunistic and disingenuous.

Examining the prejudice, if any, caused to the Defendant by the government's filing of the Death Notice two months before trial, the Court finds that Defendant was not prejudiced given the Court-appointed services provided since the day following the Defendant's arrest. The Amended Death Notice merely parroted information which was already known. Finally, the rescheduled trial date of August 29 affords the Defendant over six months from the filing of the Death Notice, which is the time the Defendant agreed was reasonable.

**5.** Since the motions and orders have been sealed at the request of Defendant, the Court at this time is precluded from discussing the experts' areas of expertise. But, suffice it to say, some of the experts relate solely to penalty phase issues and one such expert was authorized as early as October, 2004.

### III.  CONCLUSION

For the foregoing reasons, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant, Kenneth Wilk's Motion to Strike Government's "Notice of Intent to Seek the Death Penalty" and For An Order Barring the Government Form Seeking the Death Penalty, Due to Failure to Provide Reasonable Notice of Intent to Seek the Death Penalty Prior to Trial filed on March 8, 2005 [D.E. # 320] is hereby **DENIED.**

2. Defendant Kenneth Wilk's Motion to Strike the Government's Amended Notice of Intent to Seek the Death Penalty filed on March 31, 2005 [D.E. # 438] is hereby **DENIED.**

3. Defendant Kenneth Wilk's Motion For An Immediate Hearing on His "Motion to Strike the Government's Amended Notice of Intent to Seek the Death Penalty" [DE # 443] is hereby **DENIED AS MOOT.**

**DONE AND ORDERED** in Chambers at Ft. Lauderdale, Broward County, Florida, this _____ day of April, 2005.